derstood with reference to the case before him.  The insurance company understood that the statement was not made by the person whose health was in question, but by another person, whose judgment or statement as to that health was founded upon the observation of such other person, and the contract was to be construed with reference to that situation.   And Judge Finch says at page 280:

"One who is not a doctor, and speaks not of himself, but of a third person, necessarily gives rather an opinion founded on observed facts, than an absolute and accurate fact, when he describes the health of such person as good."

We have carefully examined the case cited, and find it so dissimilar from the case at bar that it affords us but little aid in disposing of the exception last considered.   Other exceptions are pressed upon our consideration by the learned counsel for the defendant, but we do not deem it necessary to review them here.

The judgment and order appealed from should be reversed, and a new trial granted, with costs to abide event.   All concur.

---

## MURR v. WESTERN ASSUR. CO. OF CITY OF TORONTO, CANADA.

(Supreme Court, Appellate Division, Fourth Department.   December 18, 1897.)

1. MARITIME LIENS FOR REPAIRS—CREATION.
    Where, at the time the damage done to an insured canal boat is examined by surveyors, and the repairs necessary to renovate the same are specified, according to the terms of the policy, insured arranges with the person who is to make the repairs to make certain extra repairs not necessitated by the damage done, such contract being an independent one on the part of the insured, by the performance of its conditions the person repairing the boat secured a lien thereon as against insured for the value of the extra repairs so made, and a right to retain the boat until that lien was satisfied.

2. MARINE INSURANCE—REPAIRS—CONVERSION BY INSURER.
    The insurer, being by such contract deprived of the power to deliver the boat until such lien should be satisfied, is not liable as for conversion thereof, upon a tender by insured of his share of the expense of the repairs specified by the surveyors, and a refusal of the repairer to surrender the boat until his lien should be satisfied, the insurer having paid its portion of the expense of the repairs.

3. PRINCIPAL AND AGENT—CONSTRUCTION OF POWER.
    Under a written power of attorney given by the owner of an insured canal boat, authorizing the agent to act in all matters, and do all necessary things pertaining to holding the survey under the policy and repairing the damage done to the canal boat, supplemented by a verbal statement to the agent to take care of the boat, and "do the best he could," such agent had authority to contract for the extra repairs on the boat other than those specified by the surveyors.

Appeal from special term, Erie county.

Action by Charles Murr against the Western Assurance Company of the City of Toronto, Canada.   From judgment for plaintiff, and an order denying a motion for a new trial, defendant appeals.   Reversed.

The action was commenced on the 11th of September, 1896.   The complaint charges the wrongful conversion of a canal boat.   The answer is a general denial.   At the close of the plaintiff's evidence a motion was made for a non-

suit upon various grounds, and at the close of the testimony defendant moved for the direction of a verdict in its favor upon the grounds stated. These motions were denied, and upon exceptions taken to such denial and upon the charge of the trial court arise the questions to be considered upon this appeal.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

George Clinton, for appellant.

George W. Cothran, for respondent.

WARD, J. The defendant is a Canadian corporation, having an agency in Buffalo. It issued a policy of insurance to the plaintiff upon his canal boat in the sum of $1,700, running one year. The risk covered by the policy embraced an injury to the plaintiff's canal boat, which occurred on the 6th of August, 1896, while the plaintiff's boat, which had loaded at Buffalo, was proceeding down the Erie Canal, when near Pendleton, in Niagara county, on its trip to New York with a cargo of wheat, it ran against something in the canal and was sunk. The defendant's agents, Messrs. Smith & Davis, of Buffalo, were immediately notified of the accident, and they sent an agent (Alfred Mayer) to look after the boat, and he took it to Buffalo for repairs. The policy required that two competent surveyors should be appointed in such a case, one to be selected by each party, and, in case of disagreement, they should appoint an umpire, whose duty it should be to make specifications in writing under oath, clearly stating both the amount of work and the manner in which it should be done to make the boat good for any damage caused by the disaster; that repairs should be made in pursuance of the statement made by the surveyors, which expenses should be borne by the insurance company, except what was called an "average," which was based upon certain principles stated in the policy, should be borne by the insured, and in this case it was $100. By consent of the parties, the boat was placed in the dry dock of one William Murphy, a boat builder in Buffalo, to make the needed repairs; the surveyors having determined what repairs were necessary, and made the written statement particularly specifying the same. About this time Mr. Murr, the plaintiff, became ill, and went to New York. Before going, however, he appointed one Adam Homer his agent to look after the business in his absence, and gave Mr. Homer a power of attorney in writing, which constituted Mr. Homer his true and lawful attorney in his name, place, and stead, and we quote:

"To act for me in all matters pertaining to holding survey and repairing damage done to my canal boat George Murr in consequence of sinking in the Erie Canal on or about August 6, 1896. Giving and granting unto my said attorney full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises as fully, to all intents and purposes, as I might or could do if personally present with full power of substitution and revocation, hereby ratifying and confirming all that my said attorney or his substitute shall lawfully do or cause to be done by virtue thereof."

That instrument was dated the 19th of August, 1896. Mr. Homer accepted this agency, and entered upon his duties. Mr. Homer testified that Mr. Murr was sick the afternoon that he gave him the power

of attorney; that he went with Murr to the office of the defendant's agents, and said he was going home, that he did not feel well; and adds: "He told me to take care of the boat, and to do the best I could." While the plaintiff was gone, Mr. Homer had sole charge of the business for him. The surveyor for the plaintiff was Mr. Cole. The defendant's surveyor was Murphy. They went into the hold of the canal boat, accompanied by Homer, and made a thorough examination of it for the purpose of specifying the repairs necessary to be done. In making the examination they discovered that many of the timbers of the boat were rotten. Her floor timbers, the timbers that go across the bottom of the boat, and those that go up the top streak, all were rotten, together with the timbers that were broken by the injury, and many of the timbers not broken were rotten. The boat did not have a bilge keelson, which the surveyors thought was necessary. While they were looking the boat over, they called Mr. Homer's attention to it, and the rotten condition of the timbers, and Mr. Cole told him that then would be the time to repair the boat where it needed repairs, and it would be cheaper than at any other time after the necessary repairs to the damage caused by the sinking was done, because the floor was up, and this portion of the keelson was up (the main keelson), and that the work could then be done cheaper, and the boat would not have to be torn up again; that those repairs would soon have to be made at all events. Mr. Homer agreed to this, and directed Mr. Murphy to make what repairs were necessary to replace the rotten timbers, and place the boat in good condition, and not confine himself to the repairs absolutely necessary to repair the damage done by the accident. Mr. Homer, assuming to act as agent for the plaintiff, directed Murphy to make all of these repairs. These extra repairs amounted to several hundred dollars, about a third of the entire expense of the total repairs. Murphy made the repairs, and presented his bill for them. The plaintiff returned, and insisted that he should have his boat from the defendant by simply paying the $100 either to the defendant or to Murphy, which is called in the case the "average."

We think that the evidence fairly warranted the court in submitting to the jury the question whether the plaintiff had not tendered the $100 to the defendant, and properly demanded the return of the boat. There is some conflict in the evidence as to whether the defendant took the position refusing to surrender the boat at all events, or took the position that Mr. Murphy had the boat in his charge,—had a lien upon the boat for the extra work,—it having paid for all the necessary work to repair the damages under the contract except the $100 which the plaintiff was to pay, and therefore he must settle with Murphy, as the defendant had no control over the boat. We think the fair preponderance of the evidence is in favor of the last position. The defendant, however, refused to accept the $100, claiming that the plaintiff should pay it to Murphy; that, under the custom governing such matters, it was the duty of the boat owner to pay the "average" to the person who repaired the damages, the defendant to pay the balance. Whereupon the plain-

tiff presented the $100 to Murphy, and demanded the boat, but did not tender him any pay for the extra work. Murphy insisted upon his lien for the extra repairs to the boat, and refused to surrender it; whereupon the plaintiff brought this action, and the court upon the trial charged the jury, in effect, that, as Murphy was not a party to the action, the question at issue was simply between the plaintiff and the defendant, and, if they found that the defendant had refused to surrender the boat upon proper demand made and a tender to it of the $100, that the plaintiff was entitled to recover the value of the boat. This was excepted to by the defendant, and upon this exception is based the chief allegation of error on the part of the defendant, and the only one we deem it necessary to consider. The defendant also raised the point on a motion to direct a verdict. We are of opinion that under the authority given by the power of attorney, supplemented by the verbal statement to Homer to take care of the boat, and do the best that he could, Homer had the authority from the plaintiff to make the arrangement with Murphy to do the extra work necessary to repair the rotten timbers, and, Murphy having done that work at the plaintiff's request, through his agent, he had a lien upon the boat for such repairs, and that Murphy stood upon the independent contract made with the plaintiff, which gave him the right to withhold the possession of the boat, as against the plaintiff, until his lien was satisfied; that, the defendant having paid for the portion of the repairs which it was bound to pay under the policy, there was nothing left for it to do except to permit the plaintiff to get his boat upon a settlement with Murphy. The plaintiff, having by the independent contract with Murphy put him in a position to retain the boat until his charges for the extra work were paid, placed it out of the power of the defendant to deliver the boat until this was done, and the plaintiff should not be permitted now to say that he can recover the value of this boat as against the defendant under these circumstances.

For this error of the trial court, the judgment must be reversed, and a new trial granted, with costs to abide the event. All concur.